UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BERT YAKLIN, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. C-07-422 |
| | § | |
| W-H ENERGY SERVICES, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## **ORDER**

On this day came on to be considered Defendants' Motion for Summary Judgment (D.E. 93), and Defendants' Motion to Strike Incompetent Evidence and for Leave to File a Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (D.E. 103). For the reasons discussed below, Defendants' Motion for Summary Judgment is hereby DENIED, and Defendants' Motion to Strike and for Leave is hereby GRANTED in part and DENIED in part.

**I.      Jurisdiction.**

The Court has federal subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiffs bring suit pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*.

**II.     Procedural Background.**

On November 2, 2007, Plaintiffs filed their original complaint with the Court, alleging a collective action against Defendants for unpaid overtime in violation of the FLSA. (D.E. 1.) On May 2, 2008, the Court conditionally certified a class comprised of:

> All persons employed by either Defendant in "Service Tech I" or "Service Tech II" positions at Defendants' Alice, Texas facility between December 1, 2004, and the present.

(D.E. 27 at 5.) Defendants have since reached a settlement agreement with the members of the class (subject to approval by the Court). (D.E. 94-97.) Plaintiff Yaklin, however, is not a member of the class and, thus, is proceeding with respect to his individual claims.

On August 15, 2008, Defendants filed a motion for summary judgment, arguing that Plaintiff Yaklin is not entitled to overtime pay because he is an exempt employee to whom the overtime pay provisions of the FLSA do not apply. (D.E. 93.) On September 2, 2008, Plaintiff Yaklin filed his response in opposition to Defendants' motion. (D.E. 102.) On September 3, 2008, Defendants filed a motion to strike certain pieces of Plaintiff's evidence as "incompetent," and for leave to file a reply in support of their motion for summary judgment. (D.E. 104.)

### III.    Factual Background.

The undisputed facts are as follows:

Plaintiff Yaklin was employed by Defendants[1] between May 1, 2003, and February 19, 2007. (D.E. 102, Ex. A.) He was a salaried employee who worked in excess of forty hours per week, but was not paid overtime. (D.E. 93, Ex. A (Yaklin Dep.) at 91:20-25, 93:15-94:1.) At the time he was terminated, his salary was approximately $4500.00 per month. (Id. at 94:5-6; D.E. 102, Ex. A.) At no time during the term of his employment was he paid less than $1820.00 per month ($455.00 per week). (D.E. 93, Ex. A (Yaklin Dep.) at 94:10-14.)

Plaintiff's job responsibilities included the following:

> Inputting the fuel logs in the computer ... [p]urchasing nitrogen, order[ing] parts, issu[ing] PO's [*i.e.*, purchase orders], input[ting] all the bills into a database that was sent to Broussard for pay, [running] parts, [taking] water readings for the

---

[1]    Plaintiff alleges that he was employed by both Defendant W-H Energy Services, Inc. ("W-H") and Defendant Coil Tubing Services, LLC ("Coil Tubing"), (D.E. 102 at 14), while Defendants allege that Plaintiff was employed by Defendant Coil Tubing only (D.E. 93 at 21-22). This dispute is addressed in section IV(E) below.

>wash system, help[ing] mechanics after hours in the shop, [taking] care of the parts room, [keeping] them stocked and up to date, [and] issu[ing] out parts when mechanics or supervisors need[ed] them.

(D.E. 93, Ex. A (Yaklin Dep.) at 23:9-21.)  The parties disagree with respect to the amount of discretion and independent judgment that Plaintiff exercised in performing these tasks.

## IV.    Defendants' Motion for Summary Judgment.

### A.    Summary Judgment Standard.

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  "[O]n summary judgment, the moving party has the initial burden of establishing that there are no issues of material fact and that it is entitled to judgment in its favor as a matter of law."  Breen v. Tex. A&M Univ., 485 F.3d 325, 331 (5th Cir. 2007) (citing Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246-47 (5th Cir. 2003)).  "If the moving party meets this burden, the burden then shifts to the non-moving party to point to evidence showing that an issue of material fact exists."  Breen, 485 F.3d at 331 (citing Rivera, 349 F.3d at 247).  "In determining whether summary judgment is appropriate, we view all of the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  Breen, 485 F.3d at 331 (citing Coleman v. Sch. Bd. of Richland Parish, 418 F.3d 511, 515-16 (5th Cir. 2005)).

### B.    Defendants Have Properly Pled Their Affirmative Defenses.

Plaintiff spends a large portion of his response in opposition to Defendants' motion for summary judgment arguing that Defendants cannot prevail on their motion because the affirmative defenses on which their motion is based—*i.e.*, that Plaintiff is exempt from the

FLSA's overtime pay provisions pursuant to 29 U.S.C. §§ 213(a)(1) (the "Administrative Exemption") and 213(b)(1) (the "Motor Carrier Act Exemption")—"are not plead as affirmative defenses by the Defendants" and, thus, "are waived." (D.E. 102, ¶¶ 6-10.) Defendants' Answer to Plaintiffs' Fifth Amended Complaint, the operative answer in this case and the answer cited by Plaintiff to support his waiver argument, however, expressly pleads both of these affirmative defenses. (D.E. 63, Affirmative Defense and/or Avoidance No. 8 ("Pursuant to 29 U.S.C. § 213(b)(1) … , Plaintiffs … were at all pertinent times exempt from the maximum-hour provisions of the FLSA.") & Affirmative Defendant and/or Avoidance No. 18 ("Pursuant to 29 U.S.C. § 213(a)(1) … , Plaintiffs … were at all pertinent times highly compensated employees exempt from the minimum-wage and maximum-hour provisions of the FLSA").) Furthermore, Defendants have maintained throughout this litigation that Plaintiff is exempt from the FLSA's overtime pay provisions pursuant to the Motor Carrier Act Exemption. (See D.E. 26 (Response in Opposition to Plaintiffs' Motion for Notice to Potential Class Members, filed April 22, 2008) at 10-14 (arguing that Plaintiffs are exempt from the FLSA's minimum-wage and maximum-hour provisions pursuant to the Motor Carrier Act Exemption). "'Where the [affirmative defense] is raised in the trial court in a manner that does not result in unfair surprise … technical failure to comply precisely with Rule 8(c) (requiring that affirmative defenses be pled) is not fatal.'" Rogers v. McDorman, 521 F.3d 381, 385-386 (5th Cir. 2008) (quoting Woodfield v. Bowman, 193 F.3d 354, 362 (5th Cir. 1999)). "The concern is that '[a] defendant should not be permitted to "lie behind a log" and ambush a plaintiff with an unexpected defense.'" Rogers, 521 F.3d at 385 (quoting Ingraham v. United States, 808 F.2d 1075, 1079 (5th Cir. 1987)). Plaintiff cannot plausibly argue that he was ambushed in this case.

### C. The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").

"As a general rule, the FLSA provides that employees are entitled to receive overtime pay at one and one-half times their regular rate for all hours worked in excess of forty per week." Diaz v. Team Oney, Inc., No. 08-12904, 2008 U.S. App. LEXIS 18970, at *3 (11th Cir. Sept. 3, 2008) (citing 29 U.S.C. § 207(a)(1)); see also Brown v. AGM Entm't, Inc., No. H-07-3439, 2008 U.S. Dist. LEXIS 51167, at *3 (S.D. Tex. July 3, 2008). "There are, however, several exemptions." Brown, 2008 U.S. Dist. LEXIS 51167, at *3. As discussed above, Defendants rely on two exemptions to the FLSA's overtime pay provisions in their motion for summary judgment: (1) the Administrative Exemption, 29 U.S.C. § 213(a)(1), and (2) the Motor Carrier Act Exemption, 29 U.S.C. § 213(b)(1).

Exemptions to the FLSA are "narrowly construed against the employers seeking to assert them and their application [is] limited to those establishments plainly and unmistakably within their terms and spirit." Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960). The burden of invoking these exemptions rests on the employer. Id. at 394 n.11.

### 1. The Administrative Exemption, 29 U.S.C. § 213(a)(1).

The Administrative Exemption exempts from the FLSA's overtime requirements "any employee employed in a bona fide … administrative … capacity …" 29 U.S.C. § 213(a)(1). The Code of Federal Regulations states that:

> The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:
>
> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week … ;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).

Regardless of whether or not Plaintiff meets the first two requirements set forth above, Defendants cannot demonstrate on summary judgment that Plaintiff qualifies for the Administrative Exemption because there exists an issue of fact with respect to whether or not Plaintiff meets the third requirement, *i.e.*, whether or not Plaintiff's "primary duty include[d] the exercise of discretion and independent judgment with respect to matters of significance." Id. The Code of Federal Regulations states that "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). The Code further states that:

> The phrase "discretion and independent judgment" must be applied in the light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; ***whether the employee has authority to commit the employer in matters that have significant financial impact***; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b) (emphasis added).

Defendants argue that Plaintiff "had the authority to commit [Defendants] to purchases that were financially significant," and, thus, that Plaintiff exercised discretion and independent judgment with respect to matters of significance. (D.E. 93 at 12.) Defendants, however, ignore Plaintiff's testimony that his authority to make purchases for Defendants had substantial limitations. (D.E. 93, Ex. A at 47:1-18.) Specifically, during his deposition, Plaintiff testified as follows:

> Q: And how did you determine what amount of nitrogen to purchase?
> A: Mr. Luera or Mr. Belano [*i.e.*, Plaintiff's supervisors] would tell me. And I would just make the phone call, basically, is what I did.

(Id. at 27:7-11.)

> Q: Did – how did you make a determination to order soda ash from the place in Alice?
> A: Mr. Belano or Mr. Luera.

(Id. at 42:5-7.)

> Q: And then would you make the – make the call on who to ultimately buy them [the parts] from?
> A: I would go give the price to Mr. Belano or Luera, show them what it was going to cost us. And they'd tell me who to get it from, and I'd call them and get it.

(Id. at 43:17-22.)

> Q: And is it – you testified that you would exceed that budget virtually every day.
> A: If I was to exceed the limit that they [Mr. Luera and Mr. Belano] had set on the computer, you know, I was to go and let them know. I had a limit that I could purchase up to $500 without any question if I needed to get it. If it was over $500, then I had to go, you know, and let them know what it was I was needing and, you know, they approved it, signed it.

(Id. at 47:10-14.)

This testimony suggests that it was Mr. Luera and Mr. Belano who exercised discretion and independent judgment with respect to financially significant purchases, not Plaintiff. This

evidence is sufficient to raise a factual issue regarding whether or not Plaintiff qualifies for the administrative exemption.  See Martinez v. Global Fin. Servs., L.L.C., C.A. No. H-07-0591, 2008 U.S. Dist. LEXIS 574, at *5 (S.D. Tex. Jan. 4, 2008) (holding that, where there was conflicting evidence and "[t]he parties describe[d] Plaintiff's job responsibilities differently," there existed an issue of fact with respect to whether or not Plaintiff qualified for the administrative exemption).

Defendants point to 29 C.F.R. § 541.203(f), which states that "purchasing agents" are administrative employees, to support their argument that Plaintiff qualifies for the Administrative Exemption.  This regulation states that "[p]urchasing agents with authority to bind the company on significant purchases generally meet the duties requirements for the administrative exemption even if they must consult with top management officials when making a purchase commitment for raw materials in excess of the contemplated plant needs."  (Id.)  As discussed above, there exists an issue of fact with respect to whether or not Plaintiff had the authority to "bind the company on significant purchases."  (Id.)  And Plaintiff's testimony demonstrates that Plaintiff was required to consult with Mr. Luera and Mr. Belano when making the majority of his purchases, not merely purchases of "raw materials in excess of the contemplated plant needs." (Id.)

### 2. The Motor Carrier Act Exemption, 29 U.S.C. § 213(b)(1).

The Motor Carrier Act Exemption exempts from the FLSA's overtime requirements "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49."  29 U.S.C. § 213(b)(1).  Section 31502 states that the Secretary of Transportation may prescribe requirements for (1) "a motor carrier," and (2) "a motor private carrier, when needed to

promote safety of operation," 49 U.S.C. § 31502(b), and 29 C.F.R. § 782.7(a) explains that "[t]he exemption of an employee from the hours provisions of the Fair Labor Standards Act under section 13(b)(1) depends both on [1] the class to which his employer belongs [*i.e.*, whether the employer qualifies as a "Motor Carrier" or "Motor Private Carrier"] and on [2] the class of work involved in the employee's job."

Defendants assert, and Plaintiff does not dispute, that Defendants qualify as "motor private carriers" within the meaning of the statute. (D.E. 93 at 16; D.E. 102 at 11.) Thus, to demonstrate that the Motor Carrier Act Exemption applies, Defendants must prove that Plaintiff's job involved the requisite "class of work." 29 C.F.R. § 782.7(a). The Code of Federal Regulations outlines the classes of work that qualify an employee for the Motor Carrier Act exemption, stating that "[t]he exemption is applicable … to those employees and those only whose work involves engagement in activities consisting wholly or in part of a class of work which is defined: (i) As that of a driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act." 27 C.F.R. § 782.2(b)(2) (citing Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695 (1947); Levinson v. Spector Motor Service, 330 U.S. 649 (1947); Morris v. McComb, 332 U.S. 442 (1947).)

> **i.   There Exists An Issue of Fact With Respect To Whether or Not Plaintiff is a "Driver."**

Defendants argue that Plaintiff qualifies as a "driver" as contemplated by the Motor Carrier Act. (D.E. 93 at 17.) They base this assertion on Plaintiff's testimony that he drove a commercial vehicle from the state of Texas to Broussard, Louisiana twice while employed by Defendants. (D.E. 93 at 17, Ex. A (Yakin Dep.) at 65:15-66:9.) The Code of Federal Regulations, however, states that:

> [W]here the continuing duties of the employee's job have no substantial direct effect on such safety of operation or *where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis*, the exemption will not apply to him in any workweek so long as there is no change in his duties. [citing Pyramid, 330 U.S. 695; Levinson, 330 U.S. 649; Morris, 332 U.S. 422; Rogers Cartage Co. v. Reynolds, 166 F.2d 317 (6th Cir. 1948); Opelika Bottling Co. v. Goldberg, 299 F.2d 37 (5th Cir. 1962); Tobin v. Mason & Dixon Lines, Inc., 102 F.Supp. 466 (E.D. Tenn. 1951).]  If in particular workweeks other duties are assigned to him which result, in those workweeks, in his performance of activities directly affecting the safety of operation of motor vehicles in interstate commerce on the public highways, the exemption will be applicable to him those workweeks, but not in the workweeks when he continues to perform the duties of the non-safety-affecting job.

(27 C.F.R. § 782.2(b)(3) (emphasis added).)  The fact that Plaintiff drove across state lines only twice during the four years he was employed by Defendants suggests that this activity was "de minumus."  See Talton v. I.H. Caffey Distrib. Co., 1:02-CV-1048, 2004 U.S. Dist. LEXIS 6894, at *15 (M.D.N.C. Mar. 11, 2004) (stating that a single trip across state lines "falls squarely within the de minumus exception to interstate activities"); Dole v. Circle "A" Constr., Inc., 738 F. Supp. 1313, 1322 (D. Idaho 1990) (a driver is not exempt under the Motor Carrier Act merely because he takes one or two interstate trips); Kimball v. Goodyear Tire & Rubber Co., 504 F. Supp. 544, 548 (E.D. Tex. 1980) (denying Motor Carrier Act exemption where only 0.17% of trips were interstate); Coleman v. Jiffy June Farms, Inc., 324 F. Supp. 664 (S.D. Ala. 1970), aff'd, 458 F.2d 1139 (5th Cir. 1971) (where only 0.23% of driver employee's deliveries were interstate, Motor Carrier Act exemption did not apply).  And, while Defendants assert that Plaintiff "was required to be available to travel interstate at any given time as part of his routine job duties," they have presented no evidence to that effect.  (D.E. 93 at 18.)  Defendants, thus, have failed to demonstrate as a matter of law that Plaintiff qualifies as a "driver" as contemplated by the Motor Carrier Act.  See Lambert v. Statewide Transp., Inc., C.A. No. 6:04-CV-00985, 2005 U.S. Dist. LEXIS 43920, at *17 (W.D. La. Oct. 12, 2005) (denying summary judgment

where "[t]he record [was] insufficient for the Court to determine whether the Motor Carrier Act exemption applie[d]").

### ii.     There Exists An Issue of Fact With Respect To Whether or Not Plaintiff is a "Loader."

Defendants also assert that Plaintiff qualifies as a "loader" as contemplated by the Motor Carrier Act. (D.E. 93 at 19.) The Code of Federal Regulations states that:

> A "loader," as defined for Motor Carrier Act jurisdiction … is an employee of a carrier subject to section 204 of the Motor Carrier Act … whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country. A 'loader' may be called by another name, such as 'dockman,' 'stacker,' or 'helper,' and his duties will usually also include unloading and the transfer of freight between the vehicles and the warehouse, but he engages, as a 'loader,' in work directly affecting 'safety of operation' *so long as he has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized.* [citing Levinson, 300 U.S. 649; Pyramid, 330 U.S. 695; Walling v. Huber & Huber Motor Express, 67 F. Supp. 855 (W.D. KY. 1946).]

(27 C.F.R. § 782.5(a) (emphasis added).)

Defendants have not presented any evidence that Plaintiff exercised "judgment and discretion in planning and building a balanced load." (Id.) While Plaintiff did testify that he "filled the nitrogen tanks on … the pump and the transport," (D.E. 93, Ex. A at 61:11-19), there is no evidence regarding whether or not he had any discretion over how this task was accomplished, or merely followed the instructions of his superiors. Defendants also argue that Plaintiff "loaded coil tubing reels weighing approximately 100,000 pounds onto trailers." (D.E. 93 at 20.) Plaintiff, however, testified that:

> The actual mechanics did that part. I didn't. I would assist. I'd go get them a wrench or get them a tube of grease or a part they would need out of the parts room. They actually would do the work on it. I was just there assisting them.

(D.E. 93, Ex. A at 57:23-58:2.)  In light of the parties' conflicting accounts of Plaintiff's "loading" responsibilities, the Court finds that there exists an issue of fact with respect to whether or not Plaintiff qualifies as a "loader" as contemplated by the Motor Carrier Act.  See Martinez, 2008 U.S. Dist. LEXIS 574, at *5.

### D. The Statute of Limitations.

"A cause of action under the FLSA must be commenced within two years [after] the cause of action accrues."  Tullous v. Tex. Aquaculture Processing Co. LLC, C.A. No. H-06-1858, 2008 U.S. Dist. LEXIS 77595, at *25 (S.D. Tex. Sept. 30, 2008) (citing 29 U.S.C. § 255(a)).  "Nevertheless, a three-year statute of limitations applies for 'willful' violations of the FLSA."  Id. at *26.  "A violation is 'willful' if an employer 'knew or showed reckless disregard for … whether its conduct was prohibited by the statute.'"  Id. (quoting Singer v. City of Waco, 324 F.3d 813, 821 (5th Cir. 2003)).

The Court has been unable to determine on summary judgment whether an FLSA violation occurred in this case.  "[T]riable issues of fact remain as to … Plaintiff['s] claims that [he] worked overtime without compensation; as such, … a determination of which statute of limitations to apply must be reserved until it is determined whether a violation of the FLSA occurred in this case."  Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1324 (11th Cir. 2007).  If the jury determines that an FLSA violation occurred, it may then make the requisite willfulness determination.

### E. There Exists and Issue of Fact With Respect to Whether or Not Defendant W-H Is Plaintiff's Employer.

Defendants argue that Defendant W-H is not a proper Defendant in this action, as it is not Plaintiff's employer.  (D.E. 93 at 21-22.)  Specifically, Defendants argue that Defendant Coil Tubing is Plaintiff's employer, and that Defendant W-H is merely Coil Tubing's parent

company. (Id.) "An 'employer' subject to the FLSA is 'any person acting directly or indirectly in the interest of an employer in relation to an employee …'" Lehman v. Legg Mason, Inc., 532 F. Supp. 2d 726, 733 (M.D. Pa. 2007) (citing 29 U.S.C. § 203(d)). "Liability for violating an employee's rights under FLSA *has attached to a parent corporation* for the acts of a subsidiary when the parent substantially controls the terms and conditions of employment at its subsidiary on a regular basis." Lehman, 532 F. Supp. 2d at 733 (citing E.E. Falk v. Brennan, 414 U.S. 190, 195 (1973)) (emphasis added); see also Tullous, 2008 U.S. Dist. LEXIS 77595, at *23 (using the "economic realities" test to determine whether separate entities constitute "joint employers" for purposes of the FLSA); Takacs v. Hahn Auto. Corp., Case No. C-3-95-404, 1999 U.S. Dist. LEXIS 21694, at *12 (D. Ohio Apr. 23, 1999) (using the "single employer" or "integrated enterprise" test to determine the liability under the FLSA of a parent corporation for the acts of its subsidiaries). The mere fact that Defendants W-H and Coil Tubing are separate corporate entities is not sufficient to shield Defendant W-H from liability for FLSA violations against Defendant Coil-Tubing's employees.

Defendants argue that Plaintiff has presented "no evidence" that there exists a connection between Defendant W-H and Defendant Coil Tubing sufficient to impose liability against Defendant W-H. (D.E. 93 at 23.) Plaintiff, however, has provided the Court with (1) testimony from Defendants' employee, James Chism, that W-H and Coil Tubing are "one in the same," (D.E. 102, Ex. D at 7:2-6), and (2) an employee handbook, titled "Coil Tubing Services and W-H Energy Services Employee Handbook," suggesting that employees of Coil Tubing, in fact, work for both entities (Id., Ex. E). The Court finds this evidence sufficient to raise an issue of fact with respect to whether or not Defendant W-H constitutes Plaintiff's "employer" as contemplated by the FLSA.

### V.   Defendants' Motion to Strike and for Leave.

Defendants seek to strike Exhibit A to Plaintiff's response in opposition to Defendants' motion for summary judgment, Plaintiff's employee exit form and employee evaluations, on the basis that it has not been properly authenticated.  (D.E. 103.)  Defendants also seek to strike Exhibit B to Plaintiff's response in opposition to Defendants' motion for summary judgment, the Declaration of Bert Yaklin, on the basis that it "contradicts Plaintiff's deposition testimony."  (Id.)  Because the Court did not consider Exhibits A or B in making its summary judgment determination, the Court need not resolve these issues on the merits and, instead, denies Defendants' requests as moot.

Defendants also seek leave to file a reply in support of their motion for summary judgment, presumably the reply attached as Exhibit 1 to their motion to strike and for leave.  (Id., Ex. 1.)  In the interests of justice, the Court hereby grants Defendants' motion for leave, and notes that it considered Defendants' reply brief in making its summary judgment determination.

### VI.   Conclusion.

Based on the foregoing:

(1)   Defendants' Motion for Summary Judgment is DENIED in its entirety;

(2)   Defendants' Motion to Strike and for Leave is GRANTED in part and DENIED in PART:

   (a)   Defendants' motion to strike Exhibits A and B to Plaintiff's response in opposition to Defendants' motion for summary judgment is DENIED as MOOT; and

      (b)      Defendants' motion for leave to file a Reply is GRANTED.

SIGNED and ORDERED this 22nd day of October, 2008.

                                                    _____
                                                         Janis Graham Jack
                                                         United States District Judge